Maurice Griffel v. Commissioner.
Griffel v. Commissioner
Docket No. 73803.
United States Tax Court
T.C. Memo 1961-220; 1961 Tax Ct. Memo LEXIS 132; 20 T.C.M. (CCH) 1079; T.C.M. (RIA) 61220; July 31, 1961
Isidore R. Tucker, Esq., 32 Broadway, New York, N. Y., for the petitioner. William F. Chapman, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent has determined deficiencies in petitioner's income tax and additions to tax as follows: Sec. 293(b),
1939 Code;
Sec. 294
Sec. 294
Sec. 6653(b),
(d)(2)
(d)(1)(A)
Year
Deficiency
1954 Code
1939 Code
1939 Code
1952
$439.09
$219.55
$26.18
$39.27
1953
457.66
228.83
28.00
42.01
1954
451.06
225.53
24.73
38.11
The issues for decision are as follows: (1) Whether *133 the Court has jurisdiction; (2) Whether the statute of limitations barred the assessment and collection of taxes for the year 1954; and (3) Whether the deficiencies in question were due to fraud. Findings of Fact Some of the facts have been stipulated and are hereby found as stipulated. Petitioner, Maurice Griffel (sometimes hereinafter referred to as Maurice) is an individual. Petitioner filed his Federal income tax returns for the years 1952, 1953 and 1954 with the district director of internal revenue, Upper Manhattan district, New York, New York. Maurice made out his own income tax returns for the years in question. Maurice was born in Poland, but moved to Vienna at an early age. Following the rise of Adolph Hitler, Maurice left Vienna in 1939 and went to England. He was in the British Army for three years, serving in what was known as a labor battalion in England and France. He had little opportunity to learn English, as most of the men in the battalion were foreigners. While in the British Army, petitioner received no additional education. In 1945, at the age of 33, Maurice came to the United States. Petitioner did not go to school in the United States, and he has *134 had no formal schooling in the English language. He acquired the knowledge of the English language that he had through conversation and newspapers. At the time of the trial, Maurice had only $10 in his bank account. He owned no other property. Since petitioner's arrival in the United States, he has been employed in various jobs, principally as a waiter. Since the end of 1947, during the major part of 1952 and for approximately 8 to 9 months out of each year in subsequent years, petitioner's principal employment was with the Hotel Astor in New York City as a banquet waiter. In the banquet department of the Hotel Astor, the functions were of such a size that many waiters were required to handle them. Included in the price of a banquet was a tip or grantuity for the waiters. At different periods of time, the waiters received slips of paper stating the waiter's name, the name of the function and the amount of tip or gratuity to which he was entitled for the particular function. These slips were then signed and turned into the payroll office where the waiter received cash in the stated amount. Petitioner knew that after a function at which he worked, he was entitled to something *135 in the nature of a tip or gratuity but did not know exactly how much. During the years in question, petitioner did not keep records of any kind as to the amount of such tips he received from the Hotel Astor. The following addresses were given on petitioner's Federal income tax returns for the years in question: Year
Address
1952
808 West End Avenue, New York City,
New York
1953
749 West End Avenue, New York City,
New York
1954
495 West End Avenue, New York City,
New York In the latter part of 1955, Ormond A. Lockhart (hereinafter referred to as Lockhart), the internal revenue agent handling petitioner's case, obtained a new address for petitioner from the Hotel Astor. This address was 260 West 72nd Street, New York City, New York. An informal conference was held on July 2, 1957. The report from this conference showed that petitioner's old address was 495 West End Avenue, and his new address, 302 West 86th Street. In September 1957, petitioner moved to 905 West End Avenue, New York, New York. At different times, respondent requested petitioner to file forms 872 extending the statute of limitation for assessment and collection of taxes. The forms actually *136 signed by petitioner, the dates and years involved are as follows: Date of
Taxable
872
Year
Address listed
1/10/56
1952 260 West 72 Street, New
York City, New York
1/16/57
1953
749 West End Avenue, New
York City, New York
5/28/57
1952
808 West End Avenue, New
York City, New York Sometime in January 1958, respondent sent petitioner's attorney a form 872, for the year 1954, for petitioner's signature. The address on the form was 210 Riverside Drive, New York City, New York. The form was never returned to respondent. The addresses on the forms 872 were placed on them by an agent of respondent. It was respondent's policy to use the address listed on a taxpayer's return and then leave it to the taxpayer to change the address if it were incorrect. The notice of deficiency, dated March 18, 1958, addressed as follows: Mr. Maurice Griffel, 302 West 86th Street, New York 14, New York was mailed to petitioner by registered mail on or about March 18, 1958. Subsequently, the notice was returned to respondent marked "Not at address given." Following its return in the mails, the notice was personally handed to petitioner by Lockhart *137 on April 22, 1958. Petitioner filed a petition with this Court which was received on June 9, 1958. The notice of deficiency received by petitioner was valid. In 1952, Maurice $500reported in tips, in 1953 he reported $550, and in 1954 he reported $500. For the years in question, petitioner failed to include, in his income, all the tips or gratuities which he received from the Hotel Astor. These amounts were $823.95, $1,199.43, and $1,302.75, for the years 1952, 1953, and 1954, respectively. The deficiencies in question were not due to fraud with intent to evade Federal income tax. Opinion Respondent has conceded that his determination with regard to the additions to tax under section 294(d)(1)(A) and section 294(d)(2) of the 1939 Code is erroneous. The parties have also agreed that certain adjustments should be made for the value of meals which was previously included in petitioner's income. These concessions will be taken into account in a Rule 50 computation. It is petitioner's contention that this Court lacks jurisdiction to decide the questions in controversy because the statutory notice of deficiency was not sent to petitioner's "last known address" in accordance with *138 section 6212(a) and (b)(1) [1] of the 1954 Code. The burden of proof is upon the petitioner to show that the notice was not sent to the petitioner's "last known address." From our findings of fact, it will be seen that petitioner had many different addresses during the period from 1952 to 1958. There is no evidence that petitioner notified respondent when he changed his address in September 1957 or at any other time. Insofar as the form 872, which was sent to taxpayer's attorney in January 1958, with the address 210 Riverside Drive, New York, New York, on it, there is no evidence that would indicate this was petitioner's "last known address." At best, there is only a showing that this was just another of petitioner's addresses and an address through which the petitioner might be reached. The address to which the notice was sent was the one shown on the informal conference report held on July 2, 1957. At the trial, petitioner made no effort to deny this was his "last known address" or that this was an address at which he had never resided. On the contrary, petitioner's attorney spent some time trying to get Lockhart to admit that 302 W. 86th Street, New York, New York, was not the last *139 address known to respondent - an admission which was never made. Based on the record before us, we hold that petitioner had failed to meet his burden of proof. Furthermore, even if there had been an error in the address as alleged, it would not have been fatal, since petitioner actually received the notice and filed a timely petition with this Court. See Clement Brzezinski, 23 T.C. 192 (1954); Kay Manufacturing Co., 18 B.T.A. 753 (1930), affd. 53 F. 2d 1083 (C.A. 2, 1931); Daniel Thew Wright, 34 B.T.A. 84 (1936), affd. 101 F. 2d 309 (C.A. 4, 1939); Rite-Way Products, Inc., 12 T.C. 475 (1949). *140 In view of our finding that there was a valid notice of deficiency, which was mailed on March 18, 1958, we hold this tolled the statute of limitations for the year 1954. Accordingly, the statute of limitation is not a bar to the assessment and collection of taxes for the year 1954. In his amended answer, respondent reduced the amount of the deficiencies originally determined. The petitioner contends that respondent changed the theory of his case, and, therefore, that the burden of proof has shifted to the respondent. This contention is devoid of any merit whatsoever. There was no "theory" stated in the deficiency notice. To shift the burden of proof, new matter must be pleaded by the respondent, something obviously not done in this case. See Rule 32, Tax Court Rules. In his amended answer, respondent determined that there was a lesser amount of unreported income than originally shown in the notice of deficiency. Petitioner introduced no evidence to show that the deficiencies determined by respondent were erroneous. Accordingly, respondent's amended determination is sustained. This amendment will be taken into consideration in the Rule 50 computation. The only question remaining *141 is whether the deficiencies were due to fraud with intent to evade tax under section 293(b) of the 1939 Code and section 6653(b) of the 1954 Code. Under these sections the burden of proving fraud is on the respondent. Fraud is a question of fact; it is never presumed, but must be shown by clear and convincing evidence. Archer v. Commissioner, 227 F. 2d 270 (C.A. 5, 1955). The evidence shows that petitioner knew that each time he worked at a function he was entitled to some additional tip or gratuity. The evidence also shows that petitioner was not an educated person. Petitioner testified that he was not sure whether the tips were reportable or not. He testified as follows: I was never sure. I was never sure, but when I saw at the end of the year my withholding slip - but in order to make sure, I discussed this question with other waiters. The boss did not deduct it like Social Security, so that is why I asked, because I don't know whether it means anything, my background or anything. I have never done any wrong move in my life, and I was always very particular about doing the right thing, and that is why I asked to do the correct thing, so I did what most of the others *142 did. They said, we put down $500 or $600 in tips, so I did the same thing. Petitioner only reported $500 to $600, in tips, for each of the years in question. It is true that large or consistent failures to report income without suggested excuse is at least some evidence of fraudulent intent. Abraham Galant, 26 T.C. 354 (1956). Here, the petitioner has offered an explanation for what he did and we do not think it incredible. Other than the consistent omissions from income, we find nothing in the record to indicate a fraudulent intent. The respondent has not shown by clear and convincing proof that petitioner's failure to report all the tips received was done with the intent to evade tax. We hold that respondent's determination in this regard was erroneous. Decision will be entered under Rule 50. Footnotes
1. SEC. 6212. NOTICE OF DEFICIENCY. (a) In General. - If the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitles A or B, he is authorized to send notice of such deficiency to the taxpayer by registered mail. (b) Address for Notice of Deficiency. - (1) Income and gift taxes. - In the absence of notice to the Secretary or his delegate under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A or chapter 12, if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.↩